**Not For Publication**                                                                                          **CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EVA M. EVERLY, : | Civil Action No. 06-1857 (FSH) |
| Plaintiff, : | |
| : | **OPINION** |
| vs. : | |
| : | March 12, 2007 |
| COMMISSIONER OF SOCIAL : | |
| SECURITY, : | |
| Defendant. : | |

**HOCHBERG, District Judge.**

This matter comes before the Court upon Plaintiff's motion to review a final determination of the Commissioner of Health and Human Services ("Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C.A. §405(g)(2007). The motion has been decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78.

**I.    Background.**

Plaintiff is a 62-year-old woman with an 11th grade education and prior work experience as a waitress, office clerk, and customer service representative. (Tr. 79, 243). She alleges that she became disabled on April 28, 2001. (Tr. 63). For purposes of determining Disability Insurance Benefits, her date last insured was September 30, 2001. (Tr. 241).

From October 1995 to May 2002, plaintiff was treated by her primary physician, Dr. Troncoso. (Tr. 151-61). He noted that plaintiff had intermittent pain in her lower back, pain in the legs and stomach, dizziness, a urinary tract infection, and a sore throat. *Id.* All of these problems were treated with medications. *Id.*

On April 28, 2001, plaintiff was admitted to the emergency room at Robert Wood

Johnson University Hospital due to pain in her right rib cage. (Tr. 137-38). Chest X-rays and a physical examination revealed nothing abnormal, and after treatment with Percocet, plaintiff was discharged the same day with a diagnosis of probable rib fracture. *Id*.

Plaintiff was seen by Dr. Mirza on June 25, 2001 for bloody stool. (Tr. 112). A colonoscopy revealed a small benign polyp, which was removed, and an upper endoscopy revealed a non-obstructing Schatzki ring, a moderate hiatal hernia, and moderate-to-severe gastritis. (Tr. 118-21). At the January 6, 2003 hearing before the ALJ, the plaintiff noted that she had been able to relieve her gastrointestinal symptoms with Gas-X and other over-the-counter medication. (Tr. 254). Dr. Mirza treated plaintiff until September 25, 2001, when he advised plaintiff to follow up with Dr. Troncoso on an as-needed basis. (Tr. 112).

Plaintiff was examined by consultative examiner Dr. Wilchfort at the request of the State Agency on August 14, 2001. (Tr. 141-42). Dr. Wilchfort's report noted that plaintiff had a long history of spinal arthritis and that she had complained of pain and numbness in the thighs. *Id*. The report also noted that plaintiff never had an MRI of either her spine or legs. *Id*. Plaintiff denied having any symptoms of pulmonary problems, and cardiac examination showed normal function. (Tr. 141-45). Dr. Wilchfort found that plaintiff's reflexes and motion in all extremities were normal and that her lung fields were clear. (Tr. 142, 147-48). Dr. Wilchfort did not recommend surgery. (Tr. 141-42).

On September 6, 2001, state examiner Dr. Selby examined plaintiff because of pain in her neck, knees, spine, and shoulders. (Tr. 146). Dr. Selby found that plaintiff could heel and toe walk without difficulty and that her knees were normally aligned. (Tr. 146-47). He noted that plaintiff had involuntarily lost approximately 60 pounds because of gastric and duodenal ulcers;

after this weight loss, plaintiff weighed approximately 180 pounds. (Tr. 146, 273). Dr. Selby examined plaintiff's thoracic spine and observed a "Dowager's Hump," which is a curvature of the upper spine. (Tr. 146-47). Dr. Selby re-examined plaintiff on September 27, 2001 and noted that she was treating her gastritis with antibiotics and other medication. (Tr. 147). Her low back pain had not changed, and recent X-rays showed no acute changes. *Id*. When Dr. Selby examined plaintiff again on October 18, 2001, he noted that her signs and symptoms were unchanged. *Id*. He prescribed Celebrex, a non-steroidal anti-inflammatory, subject to the approval of her regular doctor, Dr. Troncoso. *Id*. In 2004, subsequent to her date last insured, the plaintiff received other tests, including a CT scan and an ECG. (Tr. 209, 214-15).

## II.     Standard of Review for Disability Benefits.

This Court reviews the determination of the Commissioner to assess whether there is substantial evidence supporting the decision. 42 U.S.C.A. §405(g); *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *Brown v. Bowen*, 845 F.2d 1211,1213 (3d Cir. 1988). Substantial evidence is "more than a mere scintilla. . . [i]t means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (D. Pa. 1999) (quoting *Consol. Edison*, 305 U.S. at 229). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if this Court might have reasonably made a different finding based on the record. *See Simmonds v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).

## III.    Standard for Finding of Disability.

An individual may be entitled to Social Security Benefits upon a finding of disability by demonstrating that she is unable to "engage in any substantial gainful activity by reason of any

3

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. §423(d)(1)(A).  A disabling impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3) and 1382c(a)(3)(D).  An individual will be found disabled only if the impairment is so severe that she is not only unable to do her previous work, but cannot, considering her "age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner uses the following five-step analysis to determine whether an individual is disabled:

Step One: Substantial Gainful Activity.  The Commissioner first considers whether the individual is presently engaged in substantial gainful activity.  If so, the individual will be found not disabled without consideration of her medical condition.  20 C.F.R. §§404.1520(b) and 416.920(b).

Step Two: Severe Impairment.  If the individual is not engaged in substantial gainful activity, she must then demonstrate that she suffers from a severe impairment or combination of impairments that significantly limits her ability to perform basic work activities.  20 C.F.R. §§404.1520(c) and 416.920(c).

Step Three: Listed Impairment.  If plaintiff demonstrates a severe impairment, the Commissioner will then determine whether the impairment is listed in the regulations set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 1 or is the equivalent of a listed impairment.  If the individual

has such an impairment, the Commissioner will find the individual disabled.  20 C.F.R. §§404.1520(d) and 416.920(d).

Step Four: Residual Functional Capacity.  If the individual does not have a listed impairment, the Commissioner must determine whether the individual has the residual functional capacity to perform her past relevant work.  Residual functional capacity is defined as what the claimant can still do despite her limitations.  If she has the capacity to perform past relevant work, the individual will be found not disabled.  20 C.F.R. §§404.1520(e)-(f) and 416.920(e)-(f).

Step Five: Other Work.  Finally, if the individual is unable to perform past work, the Commissioner then considers the individual's residual functional capacity, age, education, and prior work experience to determine if she is able to perform other work functions.  If the individual cannot do so, she will be found disabled.  20 C.F.R. §§404.1520(g) and 416.920(g).  The Commissioner may conduct this analysis by using the Medical-Vocational Guidelines, unless the claimant has non-exertional limitations in addition to exertional limitations.  20 C.F.R. Pt. 404, Subpt. P, App. 2 Paragraph 200.00(e)(2).  When the claimant has non-exertional limitations in addition to exertional limitations, the Commissioner must rely on additional vocational evidence.  *Id.*

The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof.  *Wallace v. Secretary of Health and Human Services*, 722 F. 2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of persuasion in the first four steps, but if the analysis reaches the fifth step, the Commissioner bears the burden of proving that the claimant is capable of gainful employment other than her past relevant work and that jobs which the claimant can perform exist in substantial numbers in the national economy.  *Bowen v. Yuckert*, 482 U.S. 137,

146 n.5 (1987). If there is a finding of disability or non-disability at any point during the review, the Commissioner does not review the claim further. 20 C.F.R. §§404.1520(a)(4) and 416.920(a)(4).

**IV.    Analysis.**

In his Step One analysis, Administrative Law Judge John Farley (the "ALJ") found that plaintiff had not engaged in substantial gainful activity for the alleged period of disability. At Step Two of the analysis the ALJ determined that plaintiff's back impairment qualified as severe under the Regulations. At Step Three of the analysis the ALJ determined that plaintiff's limitations did not meet or medically equal any of the Listings. The ALJ concluded in his Step Four analysis that the plaintiff had the residual functional capacity to meet the demands of her past relevant work as a clerical worker. The ALJ held that plaintiff's allegations were not credible and found her to be "not disabled."[1]

Plaintiff's complaint alleges that (1) the ALJ did not consider or recite key medical evidence; (2) the ALJ did not properly consider the combined effect of plaintiff's impairments; (3) the ALJ incorrectly evaluated plaintiff's residual functional capacity; (4) the ALJ erroneously found no non-exertional limitations; (5) the ALJ erroneously evaluated plaintiff's credibility; and (6) the ALJ did not properly develop the record as mandated by the appeals council.[2]

---

[1] The ALJ did not conduct a Step Five analysis because his finding at Step Four terminated review.

[2] The ALJ first issued a decision on June 26, 2003 finding plaintiff not disabled. Plaintiff petitioned the appeals council for review, and the appeals council granted a rehearing to further develop the record. (Tr. 41-42). The ALJ held a new hearing on January 26, 2003 and issued a new decision on February 10, 2005 again denying plaintiff disability benefits. (Tr. 25, 239). That second decision is the subject of this appeal.

A.     **Consideration or Recitation of Key Medical Evidence.**

Plaintiff first alleges that the ALJ did not give due consideration to medical evidence after plaintiff's date last insured. To establish a claim for Disability Insurance Benefits, plaintiff must establish that she was disabled prior to the expiration of her insurance. 42 U.S.C. §§423(a)(1)(A) and (c)(1). An ALJ should consider evidence subsequent to the date last insured, but the focus of the inquiry should be on the period between the onset of the disability and the date last insured. *See Ward v. Shalala*, 898 F.Supp. 261, 263 (D. De. 1995). Here, the ALJ noted that he gave consideration to whether post-expiration evidence could relate back to the period in question. (Tr. 21). The Court therefore finds that plaintiff's allegation is without merit.

Plaintiff alleges that the ALJ committed reversible error by failing to mention or consider several key pieces of evidence. In *Cotter v. Harris*, 642 F.2d 700, 705-06 (3d Cir. 1981), the Third Circuit held that the ALJ must recite not only the evidence that supports the result but also the evidence that is rejected. The ALJ must analyze "all the evidence" and explain the weight given to "obviously probative exhibits." *Id.* at 705. Plaintiff alleges that the ALJ neglected to analyze or note plaintiff's diagnosis with a "Dowager's Hump;" that the polyp removed from plaintiff's colon was an adenoma; and that plaintiff has chronic diarrhea.

The Court finds that these claims are without merit. The ALJ considered and rejected this evidence.[3] The purpose of the *Cotter* doctrine is not to require the ALJ to give an explicit

---

[3] Although the ALJ did not specifically mention "Dowager's Hump," he noted that plaintiff had a severe back impairment. (Tr. 24). Similarly, although the ALJ did not specifically mention plaintiff's chronic diarrhea, he addressed its cause by noting plaintiff's moderate to severe gastritis. (Tr. 20). The Court finds the fact that the small polyp removed from plaintiff's colon was an adenoma is not particularly probative because an adenoma is a benign tumor. The Court holds that the ALJ's failure to mention the benignity of the polyp is not reversible error.

recitation of the entire evidentiary record but rather to require the ALJ to recite the evidence with sufficient specificity for a reviewing court to know the basis of the decision. *Cotter*, 642 F.2d at 704-06. The ALJ's decision here was specific enough to facilitate this Court's review.

Plaintiff further alleges that the ALJ failed to acknowledge that plaintiff suffers from multiple severe impairments. Specifically, plaintiff alleges that the ALJ should have acknowledged that plaintiff's pre-cancerous gastrointestinal conditions, lung conditions, and vertigo were severe. A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). The Court finds that the ALJ adequately considered the multitude of Plaintiff's ailments.[4]

Further, at Step Two it is only necessary for the ALJ to find *one* severe impairment in order to proceed to the next analytical step. 20 C.F.R. §404.1520(c). Here, the ALJ found in plaintiff's favor at Step Two by holding that plaintiff had a severe back disorder. Additional findings of severe impairments would therefore not change the ALJ's determination. This Court finds that the ALJ gave appropriate consideration to plaintiff's multiple impairments.

**B.**     **Combined Effect of Plaintiff's Impairments.**

Plaintiff alleges that the ALJ failed to consider the combined effect of plaintiff's

---

[4] Specifically, it was not error for the ALJ not to consider plaintiff's risk of cancer because the risk of cancer did not impair plaintiff's ability to work. The ALJ also did not have to consider the minimal evidence that plaintiff cites of lung problems because this evidence came from a report in 2004, subsequent to plaintiff's date last insured. (Tr. 209-10). Further, the ALJ expressly noted that plaintiff was not being treated for vertigo and was never referred for followup treatments, so this condition could not be considered severe. (Tr. 23).

impairments throughout his analysis.[5] The Regulations provide that a severe combination of impairments must be considered throughout the disability determination process. 20 C.F.R. §§404.1523 and 416.923. An ALJ must therefore consider whether plaintiff's combination of impairments meet or equal a listed impairment at Step Three, where the claimant bears the burden of proof. 20 C.F.R. §§404.1520(d) and 416.920(d). The ALJ found that the plaintiff's impairments did not meet or equal Listing 1.04 either individually or in combination. Listing 1.04 requires a disorder of the spine along with evidence of nerve root compression, spinal arachnoiditis, or lumbar spine stenosis resulting in the inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Paragraph 1.04. The Court finds that express consideration of plaintiff's vertigo or gastritis would not have helped her satisfy the requirements of Listing 1.04 and that the ALJ's finding at Step Three was supported by substantial evidence.[6]

## C.     Evaluation of Plaintiff's Residual Functional Capacity.

At Step Four, the ALJ must evaluate whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. §§404.1520(e)-(f) and 416.920(e)-(f). If the claimant has this capacity, the ALJ will find the claimant "not disabled" and review the claim no further. *Id.*; 20 C.F.R. §§404.1520(a)(4) and 416.920(a)(4). Here, the ALJ found that plaintiff has the residual functional capacity to perform sedentary work and that she could therefore

---

[5] At Step Two, the Regulations require the ALJ to consider whether the combined effect of all impairments is sufficiently severe to qualify for disability. 20 C.F.R. §§ 404.1523 and 416.923. Plaintiff's assignment of error is moot for the ALJ's Step Two analysis because the ALJ found that plaintiff's back disorder *alone* was a severe impairment. An additional finding that her combined impairments were severe would not advance plaintiff's claim for Social Security Benefits.

[6] Plaintiff, who has the burden of proof at Step Three, did not allege that her impairments meet or equal another listing.

9

perform her prior job as an office worker. Plaintiff alleges that she cannot perform sedentary work because of pain in her neck, vertigo, chronic diarrhea, and shortness of breath.

The Court finds that the ALJ's holding that plaintiff has a residual functional capacity for sedentary work is supported by substantial evidence. The record shows, and the ALJ noted, that plaintiff has no trouble walking and has normal motion in all her limbs. None of plaintiff's doctors referred her for followup treatments for her colon condition, recommended she undergo surgery, or referred her to physical therapy. Further, plaintiff is able to drive and to use public transportation. The ALJ found that plaintiff's subjective complaints of pain were not wholly credible due to their inconsistency with both the medical record and with her continued daily activities. Because plaintiff possesses the capacity for sedentary work and can therefore return to her past work as a clerical worker, this Court holds that the ALJ's finding of "not disabled" at Step Four was supported by substantial evidence and that the analysis correctly terminated at Step Four.

D.      **Finding of no Non-exertional Limitations.**

Plaintiff alleges that this case requires remand because the ALJ erroneously found that plaintiff has no significant non-exertional limitations. If a claimant has non-exertional limitations in addition to exertional limitations, the ALJ cannot rely solely on the Medical-Vocational Guidelines in a Step Five analysis but must also consider additional vocational evidence. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Paragraph 200.00(e)(2). An ALJ's failure to consider this evidence in a Step Five analysis requires remand. *See Sykes v. Apfel*, 228 F.3d 259, 264-65 (3d Cir. 2000). Plaintiff alleges that she has significant non-exertional limitations and that this Court must remand because the ALJ did not consider additional vocational evidence at

Step Five. However, because the ALJ properly concluded that plaintiff was "not disabled" at Step Four, the analysis did not reach Step Five.

E.      **Evaluation of Plaintiff's Credibility.**

Plaintiff alleges that the ALJ improperly concluded that plaintiff was not credible when he determined that plaintiff has the residual functional capacity for sedentary work. The ALJ's credibility finding was based on conflicts between plaintiff's complaints and her actions, including plaintiff's failure to seek treatment for her claimed depression; her ability to take a train and cab to get to her hearing; her continued shopping with her daughter; and her conflicting claims as to why her last job ended. The plaintiff disputes the ALJ's credibility findings.[7] This Court holds that there is substantial evidence, including the conflicts between plaintiff's complaints and her actions, to support the ALJ's credibility finding.

F.      **Appeals Council Mandate to Develop the Record.**

Plaintiff alleges that the ALJ failed to develop the record as mandated by the appeals council.[8] The appeals council ordered the ALJ to evaluate plaintiff's subjective complaints, to further consider the plaintiff's residual functional capacity, and to provide a rationale with citations to the record. (Tr. 41-42). A comparison of the ALJ's first opinion (Tr. 31-34) with his second opinion (Tr. 19-25) shows that the ALJ properly observed the requirements of the remand order. Although the first opinion provides only a cursory discussion of the evidence and

---

[7] Specifically, plaintiff claims that her failure to seek treatment for her claimed depression was due to problems with charity care; that her ability to use public transportation and shop with her daughter should not cut against her claim of disability; and that she could easily explain her conflicting statements as to why her last job ended.

[8] *See supra* note 2.

rationale for its findings, the second opinion contains a lengthy discussion of residual functional capacity and plaintiff's subjective complaints, supported by citations to the record, the Regulations, and pertinent Social Security Rulings.  The plaintiff's allegation that the ALJ should have sought clarification from sources and assistance from medical experts is without merit; the appeals council order to take new evidence was phrased in permissive terms, and the transcript of the second hearing shows that the ALJ took further testimony to supplement the record.  This Court therefore finds that the ALJ correctly observed the requirements of the appeals council's order.

**V.**     **Conclusion.**

For the aforementioned reasons, this Court holds that the ALJ's finding of "not disabled" is supported by substantial evidence.  The ALJ committed no errors of law; correctly considered all the evidence; considered the combined effect of plaintiff's impairments; evaluated plaintiff's residual functional capacity; assessed plaintiff's credibility; and developed the record as mandated by the appeals council.  Because plaintiff's eleven assignments of error are without merit, this Court accordingly affirms the Commissioner's denial of Social Security Disability Benefits to plaintiff.

/s/ Faith S. Hochberg
**Hon. Faith S. Hochberg, U.S.D.J.**